IN THE CIRCUIT COURT OF SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

**25**

Case No.: _____

MURAT BENJAMIN, et al.,

**12-20276**

Plaintiff(s),

vs.

*7·20-12*

CITIMORTGAGE, INC.,

*/30P*

Defendant,                    **SUMMONS**

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in the action on defendant:

**CT CORPORATION SYSTEM as Registered Agent for
CITIMORTGAGE, INC.
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition and Request for Production on S. Tracy Long, Esquire, The Law Offices of S. Tracy Long, P.A., plaintiff's attorney, whose address is 600 West Hillsboro Blvd., Suite 102, Deerfield Beach, Florida 33441, within forty-five (45) days after service of this summons on the defendant, exclusive of the day of service, and to file the original defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on July 18, 2012.

JUL 19 2012

HOWARD C. FORMAN
As Clerk of the Court

By: _____

NAJLA FLOREZ

A TRUE COPY
Circuit Court Seal

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA
CIVIL DIVISION



MURAT BENJAMIN, *et al.*,

      Plaintiff(s),

v.                         Case No.:

CITIMORTGAGE, INC.

      Defendant

12 - 2 0 2 7 6

JUL 19 2012

CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

      COMES NOW the plaintiff MURAT BENJAMIN (hereinafter referred to as either the "Plaintiff," "Homeowner," or "Borrower" interchangeably) and sues the Defendant Citimortgage, Inc. and alleges:

<strong>COMPLAINT</strong>

    1.    This is an action that arises under the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") Section 501.201 *et. seq.*, Florida Statutes, but is otherwise an action for damages in excess of $15,000.00, exclusive of any claim for reasonable attorneys fees or taxable costs.

    2.    The Homeowner is an adult resident of Broward County, Florida and is, in all respects material hereto, *sui juris*. The Homeowner is also a "consumer" as defined by Section 501.203(7), Florida Statutes, and a "homeowner" as defined by Section 501.1377(2)(e), Florida Statutes.

    3.    The Loan Servicer is a Missouri corporation, but is authorized to conduct, and is, in fact conducting, business in the State of Florida in Broward County. As a consequence thereof, the Loan Servicer is, in all respect material hereto, subject to the

jurisdiction of this Court. The Loan Servicer is not a "financial institution" as defined by Section 655.005, Florida Statutes.

4.      At all times material hereto, the Loan Servicer serviced the loan between the Homeowner and CitiFinancial Mortgage Company, LLC.. (hereinafter referred to as the "Lender") regarding the property that was located at 5309 Madison Street, Hollywood, FL 33163 (hereinafter referred to as the "Property"). As a consequence thereof, venue is proper in this court.

## FACTUAL ALLEGATIONS

5.      At all times material hereto, the Loan Servicer is engaged in "trade or commerce" in the State of Florida and Broward County as defined by Section 501.203(8), Florida Statutes, in the conduct of their debt collection, loss mitigation and foreclosure activities.

6.      In the course of their conduct, management and oversight of loan servicing for the Lender, and specifically the Homeowner's loan, the Loan Servicer has engaged in a pattern of unfair and deceptive practices.

7.      The Loan Servicer's unfair and deceptive practices in the discharge of their loan servicing activities, include, but are not limited to, the following:

a.      failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

b.      chargining excessive or improper fees for default-related services;

c.      failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;

d.     imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage;

e.     providing borrowers false or misleading information in response to borrower complaints; and

f.     failing to maintain appropriate staffing, training, and quality control systems.

8.     Under the Treasury's various rescue and stimulus programs, the mortgage servicers (or the lenders which they serviced) received monetary incentives from the Federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages.  See, e.g., Making Home Affordable Handbook v.3.3, ch. 13 ("Incentive Compensation") (Sept. 1, 2011).  Under the programs, the Banks agreed to fulfill requirements set forth in program guidelines and servicer participation agreements.

9.     The Loan Servicer in this case regularly conducts or manages modifications on behalf of the entities that hold the loans and mortgages and that hired the Loan Servicer as a mortgage servicer.

10.    In the course of their servicing and oversight of mortgage loans, and specifically the Homeowner's mortgage loan, the Loan Servicer violated federal laws, program requirements and contractual requirements government loss mitigation.

11.    In the course of their conduct, management, and oversight of loan modifications in the State of Florida and Broward County, the Loan Servicer has engaged in a pattern of unfair and deceptive practices.

12. The Loan Servicer's failure to discharge their required loan modification obligations, and related unfair and deceptive practices, in general, but specifically in regard to the Homeowner's mortgage loan include, but are not limited to, the following:

a. failing to perform proper loan modification underwriting;

b. failing to gather or losing loan modification application documentation and other paperwork;

c. failing to provide adequate staffing to implement programs;

d. failing to adequately train staff responsible for loan modifications;

e. failing to establish adequate processes for loan modifications;

f. allowing borrowers to stay in trial modifications for excessive time periods;

g. wrongfully denying modification applications;

h. failing to respond to borrower inquires;

i. providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

j. providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

k. providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during loan modification periods;

l. misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

4

m.   failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

n.   falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

o.   miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

p.   misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

q.   failing to properly process borrowers' applications for loan modifications, including failing to respond to borrowers' reasonable requests for information and assistance; and

r.   failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers.

s.   misleading borrowers by providing false or deceptive reasons for denial of loan modifications.

13.   Each of the mortgage servicers regularly conducts or manages foreclosure on behalf of entities that hold mortgage loans and have contracted with those entities to service such loans.

14.   As a direct and proximate result of the Loan Servicer's deceptive and unfair trade practices, the Homeowner has sustained significant economic damages, which will continue into the future and slander of credit.

WHEREFORE, the Homeowner demands entry of judgment against the Defendant for (a) compensatory damages; (b) punitive damages, upon a proper proffer of evidence to the Court, (c) reasonable attorneys fees pursuant to Section 501.2105, (d) taxable costs as the prevailing party, (d) trial by jury on all issues so triable as a matter of right, and (e) further relief that is deemed to be just and proper under all of the facts and circumstances of this matter.

Dated this ____ day of _____, 20__.

Respectfully submitted,

Law Offices of S. Tracy Long, P.A.
*Attorneys for the Plaintiff(s)*
c/o Legal Management, LLC
600 W. Hillsboro Boulevard
Suite 102
Deerfield Beach, FL 33441
Telephone: (954) 719-7900
Facsimile: (888) 200-9180

By: _____
S. Tracy Long, Esq.
Fla. Bar No.: 0843008
E-Mail: stl@cloudlegal.com

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE12-20276 (25)

MURAT BENJAMIN, et al.,

        Plaintiffs,

vs.

CITIMORTGAGE, INC.,

        Defendant.

_____/

## NOTICE OF APPEARANCE

**PLEASE TAKE NOTICE** that William P. Heller and Jason P. Bichsel of the law firm
of Akerman Senterfitt hereby enter their appearance on behalf of defendant CitiMortgage, Inc.,
and request that they be copied on all filings relative to this lawsuit.

Respectfully Submitted,

William P. Heller
Florida Bar No. 987263
e-mail: william.heller@akerman.com
Jason P. Bichsel
Florida Bar No. 88954
email: jason.bichsel@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Counsel for CitiMortgage, Inc.*

{24598918;1}

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail

on this 2nd day of August, 2012 to:

S. Tracy Long, Esq.
Law Offices of S. Tracy Long, P.A.
600 W. Hillsboro Blvd.
Suite 102
Deerfield Beach, Florida 33441

Jason P. Bichsel

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:  CACE12020276 (25)

MURAT BENJAMIN,

       Plaintiff,

vs.

CITIMORTGAGE, INC.,

       Defendant.

_____/

## CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT

### I. INTRODUCTION

Plaintiff, Murat Benjamin's complaint alleges a laundry list of general mortgage servicing conduct he believes violates Florida's Deceptive and Unfair Trade Practices Act (**FDUTPA**), § 501.201, FLA. STAT., *et seq*.  But, Mr. Benjamin had already entered into the loan agreement when the alleged deceptive actions transpired, and defendant CitiMortgage, Inc. (**CMI**) was not attempting to sell him any new products or services.  No trade or commerce—a statutory requirement—is involved.  The complaint should be dismissed with prejudice.

Besides, Mr. Benjamin's form complaint fails to connect any of his vague and conclusory allegations about the mortgage servicing industry to any allegations about actions CMI took with respect to his loan.  Mr. Benjamin does not allege anything about what conduct he believes was unfair or deceptive, how he was affected by that alleged conduct, or how he was damaged by it.

Mr. Benjamin's failure to plead the necessary elements of a FDUTPA claim mandates dismissal of his complaint.

{24609107;1}

## II. LEGAL ANALYSIS

### A.    Standard On Motion To Dismiss

Florida Rule of Civil Procedure 1.110(b) requires that a complaint "must state a cause of action and shall contain...a short and plain statement of the ultimate facts showing that the pleader is entitled to relief..." To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief. *See C&J Sapp Publishing Co. v. Tandy Corp.,* 585 So. 2d 290, 292 (Fla. 2d DCA 1991); *Beckler v. Hoffman,* 550 So. 2d 68, 70 (Fla. 5th DCA 1989) (allegations which are general, vague, and conclusory are insufficient to comply with Rule 1.110(b)).

A motion to dismiss is appropriate where the original pleading fails to state a cause of action. *See* FLA. R. CIV. P. 1.140(b)(6); *see also McWhirter, Reeves, et. al. v. Weiss,* 704 So. 2d 214, 215 (Fla. 2d DCA 1998) *(*citing *Pizzi v. Central Bank & Trust Co.,* 250 So. 2d 895, 897 (Fla. 1971)). It is proper to dismiss a complaint with prejudice if the pleading cannot be amended to state a cause of action. *See Gamma Dev. Corp. v. Steinberg,* 621 So. 2d 718, 719 (Fla. 4th DCA 1993); and *Ins. Concepts And Design, Inc. v. Healthplan Services., Inc.,* 785 So. 2d 1232, 1236 (Fla. 4th DCA 2001).

### B.    Mr. Benjamin Fails to State a FDUTPA Claim.

To state a claim under FDUTPA, an individual must allege **(1)** a deceptive or unfair practice in the course of trade or commerce, **(2)** causation, and **(3)** actual damages. *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

Mr. Benjamin alleges CMI violated FDUTPA by engaging "in a pattern of unfair and deceptive practices." (Compl. ¶ 6.) He then provides a laundry list of vague and conclusory allegations to support this contention. (Compl. ¶¶ 7 a-f; 12 a-s.) All of the allegedly deceptive acts are generalized to have been perpetrated against all "borrowers," and nowhere does Mr.

2

Benjamin plead any specific deceptive or unfair actions perpetrated against him, or plead how any of the acts were conducted in the course of "trade or commerce." Mr. Benjamin also fails to allege how any of CMI's actions damaged him in any way. Conclusory allegations cannot satisfy FDUTPA pleading requirements. *See Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-CIVMartinez, 2005 WL 975773, at *8 (S.D. Fla. Mar. 4, 2005) ("To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the seller in the court of trade or commerce.") (citing *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1320 (S.D. Fla. 2004)). The complaint must be dismissed. *Beckler*, 550 So. 2d at 70 (allegations which are general, vague, and conclusory are insufficient to comply with Rule 1.110(b)).

     **i.    No "Trade or Commerce."**

Despite Mr. Benjamin's conclusory allegation that "[a]t all times hereto, the Loan Servicer is [sic] engaged in "trade or commerce" in the State of Florida" (Compl. ¶ 5), none of the alleged deceptive or unfair acts were committed in the course of trade or commerce. *See* § 501.204(1), FLA. STAT.; *see also Merrill Lynch*, 2005 WL 975773, at *8.

The intent of FDUTPA is "to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985). Section 501.203(8) defines trade or commerce as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." In order to assert "a cause of action under the FDUTPA [the plaintiff] must be the 'purchaser of any good or service, or thing of value' that the defendant advertised, solicited, provided, offered, or distributed." *ATLC, Ltd. v Eastman Kodak Co.*, No. 6:11-cv-855-Orl-

3

31GJK, (M.D. Fla, Oct. 25, 2011) (citing *Hughes Supply, Inc. v. Continental Recovery Servs. Corp.*, No. No. 6:07-cv-1009-Orl-31KRS, 2007 WL 2120318 at *2 (M.D. Fla. 2007).

Mr. Benjamin does not allege (nor can he) that any of the general conduct he alleges to be unfair or deceptive are connected to the purchase of any good or service that was advertised, solicited, provided, offered, or distributed by CMI. Simply put, the activities identified by Mr. Benjamin as violating FDUTPA are not considered "trade or commerce."

Courts have found no trade or commerce in cases involving mortgage loan servicing, like this one. *See Trent v. Mortgage Electronic Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (holding pre-suit communications by the note holder were not "trade or commerce" because they did not "advertise, solicit, provide, offer or distribute anything"); *see also Hughes Supply, Inc.*, 2007 WL 2120318, at *2 (holding no FDUTPA claim because defendant was not "the purchaser of any good or service, or thing of value that the [p]laintiff advertised, solicited, provided, offered, or distributed").

In *Trent*, the court dismissed a FDUTPA claim involving pre-foreclosure communications to borrowers, observing that the "trade or commerce" requirement was not met where the defendant was simply pursuing legal remedies against the plaintiff:

> [U]nder the plain language of the statute, [the defendant] did not "advertise, solicit, provide, offer or distribute" anything. What [the defendant] did is obtain a legal interest in a note from third party lenders (becoming the "holder" of the note so that it could lawfully foreclose) and then proceeded to foreclosure. That [the defendant] communicated presuit with plaintiffs that it was a "creditor" or "owned" the debt does not fall within the purview of "trade or commerce."

*Trent*, 618 F. Supp. at 1365 n. 12.

In *Trent*, the court found that, even assuming pre-foreclosure communications from the defendant were deceptive and unfair, the communications did "not fall within the purview of 'trade or commerce.'" *Id; see also City of Cars, Inc. v. Simms*, 526 So. 2d 119, 121 (Fla. 5th

DCA 1988) (finding that because the litigation did not relate to the original sale of the car, only the repossession, it did not fall within the meaning of a consumer transaction under FDUTPA).

This case should not be decided differently. Mr. Benjamin had already entered into the loan agreement when any of the alleged activities would have occurred, and CMI was not attempting to sell Mr. Benjamin any new products or services. Even if any of the allegedly deceptive activities occurred, which Mr. Benjamin has not even alleged occurred for his loan, the activities did not take place in the course of "trade or commerce" under FDUTPA because the activities occurred while CMI was servicing a loan agreement already in place. Mr. Benjamin cannot cure this pleading deficiency. Dismissal with prejudice is warranted.

### 2.    No "Unfair" or "Deceptive" Act.

"To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act . . . ." *Merrill Lynch*, 2005 WL 975773, at *8.  This requires factual allegations of conduct that "'offended established public policy' and are 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' or involved a representation, omission or practice that was likely to mislead . . . ." *Id.* at *9 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Mr. Benjamin alleges CMI violated FDUTPA by: (1) failing to properly oversee vendors involved in servicing activities; (2) charging excessive or improper fees for default-related services; (3) failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements; (4) imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage; (5) providing borrowers false or misleading information in response to borrower complaints; (6) failing to maintain appropriate staffing, training, and quality control system; and another lengthy list of similarly generic

allegations regarding CMI's failure to discharge alleged loan modification obligations. (Compl., ¶¶ 7 (a-f), 12 (a-s).)   Mr. Benjamin fails to allege any facts to suggest that any of the laundry list of alleged actions occurred with respect to his loan, how the action was likely to mislead consumers, or that he was actually misled. As conclusory boilerplate allegations are not sufficient to state a cause of action, Mr. Benjamin cannot base his FDUTPA claim on deception. *See Beckler*, 550 So. 2d at 70 (allegations which are general, vague, and conclusory are insufficient to comply with Rule 1.110(b)); *Merrill Lynch*, 2005 WL 975773 at *8 ("To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the seller in the course of trade or commerce.").

### 3.    Mr. Benjamin Fails to Plead Causation.

Mr. Benjamin also fails to allege sufficient facts showing he was actually aggrieved by an unfair or deceptive act. He merely alleges that "as a direct and proximate result of the Loan Servicer's deceptive and unfair trade practice, the Homeowner has sustained significant economic damages . . . and slander of credit." (Compl., ¶ 14.)

An illustrative case is *Kais v. Mansiana Ocean Residences, LLC*, No. 08-21492-CIV, 2009 WL 825763, *2 (S.D. Fla. Mar. 26, 2009). In *Kais*, the court addressed a plaintiff's failure to plead the causation element of FDUTPA. A condominium purchaser filed suit against the developer for rescission of a purchase agreement based upon alleged violations of ILSA and FDUTPA. *Id.* at *1. To support his FDUTPA claim, the plaintiff alleged the developer engaged in three deceptive and unfair practices, including providing an "estimated" date of completion, failing to deliver a property report in violation of ILSA, and using an "opt-out method" of choosing a title company. *Id.* The developer moved to dismiss on the grounds that the plaintiff

failed to state a claim under FDUTPA. *Id.* The court granted the motion holding the plaintiff failed to plead causation as legally required.

> Plaintiff merely states that "subsequent delay and ultimate loss of monies paid have damaged [Plaintiff]", but fails to show **how** the estimated date of completion, missing property report, and opt-out method **caused him any damages. Nowhere in the Second Amended Complaint does Plaintiff state that these alleged deceptive acts caused him to enter into the contract with Defendant or caused him to act differently in any way (e.g. asking for certain contract concessions).**

*Id.* at *2 (emphasis added).

Like the plaintiff in *Kais*, Mr. Benjamin insufficiently alleges FDUTPA causation— *i.e.*, **how** any alleged misrepresentations or acts caused him damage. As in *Kais*, nowhere does Mr. Benjamin plead that any of CMI's alleged actions caused him to act differently and to his detriment. No causation allegations means Mr. Benjamin has failed to meet his threshold pleading burden. Dismissal of the complaint is appropriate.

### 4.    Mr. Benjamin Fails to Plead Recoverable Damages.

None of the alleged deceptive or unfair acts diminished the value of Mr. Benjamin's loan. Florida courts interpret "actual damages" under FDUTPA to mean the diminished value of goods or services **received**. *See Rollins*, 951 So. 2d at 869-70 ("The standard for determining actual damages recoverable under FDUTPA is well-defined in the case law: the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered...."). Consequential damages are not available. *Id.*, 951 So. 2d at 869-70; *see also Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) (holding consumer damaged by used car dealer's false representations that automobile had not previously been involved in accident had to present evidence as to car's diminished value);

7

*Urling*, 468 So. 2d at 454 (Fla. 1st DCA 1985); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984), review denied, 461 So. 2d 114 (Fla. 1985).

Mr. Benjamin alleges nothing about his supposed damages, other than a vague statement that he has "sustained significant economic damages." (Compl. ¶ 14.) A plaintiff like Mr. Benjamin, failing to allege a recoverable FDUTPA loss, cannot state a valid cause of action. *Smith v. 2001 South Dixie Hwy, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004) ("We conclude that the trial court was correct in dismissing appellant's complaint because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action.").

## IV.   CONCLUSION

Mortgage loan servicing is not "trade or commerce," and this Court should dismiss Mr. Benjamin's FDUTPA claim with prejudice as a result. Even without that threshold defect, Mr. Benjamin's generic allegations are insufficient to plead a valid cause of action under FDUTPA. His wholesale failure to allege any connection between the general conduct he alleges occurs in the mortgage servicing industry and CMI's servicing of his loan warrants dismissal.

Respectfully submitted,

William P. Heller
Florida Bar No. 987263
e-mail: william.heller@akerman.com
Jason P. Bichsel
Florida Bar No. 88954
email: jason.bichsel@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

*Counsel for CitiMortgage, Inc.*

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via U.S. Mail and electronic mail to S. Tracy Long, Esq., Law Offices of S. Tracy Long, P.A. c/o Legal Management, LLC, 600 W. Hillsboro Blvd., Suite 102, Deerfield Beach, Florida 33441, stl@cloudlegal.com, on August 3/, 2012.

Jason P. Bichsel

9

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE12020276 (25)

MURAT BENJAMIN,

      Plaintiff,

vs.

CITIMORTGAGE, INC.,

      Defendant.

_____/

## NOTICE OF HEARING
### (Motion Calendar)

**YOU ARE HEREBY NOTIFIED** that we have set the hearing before the Honorable

Carol-Lisa Phillips, in the Broward County Courthouse, Courtroom 1070, 201 Southeast Sixth

Street, Fort Lauderdale, Florida 33301 on the Tuesday, October 16, 2012 at 8:45 a.m. on:

### CITIMORTGAGE, INC.'S MOTION TO DISMISS COMPLAINT

*\*I hereby certify that A) I have a made a good faith attempt to resolve this matter prior to my
noticing this motion for hearing, and B) the issues before the Court may be heard and resolved
by the court within five (5) minutes\**

Respectfully submitted,

AKERMAN SENTERFITT

William P. Heller
Florida Bar No. 987263
Primary E-mail: william.heller@akerman.com
Secondary E-mail: lorraine.corsaro@akerman.com
Jason P. Bichsel
Florida Bar No. 88954
Primary E-mail: jason.bichsel@akerman.com
Secondary E-mail: joyce.gutierrez@akerman.com
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Counsel for CitiMortgage, Inc.*

{25130424;1}

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by electronic mail on this 12th day of September, 2012 to:

S. Tracy Long, Esq.
Law Offices of S. Tracy Long, P.A.
stl@cloudlegal.com
sarah@defensedefense.com

Jason P. Bichsel

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:  CACE12020276 (25)

MURAT BENJAMIN,

     Plaintiff,

v.

CITIMORTGAGE, INC.,

     Defendant.

_____/

## AGREED ORDER GRANTING CITIMORTGAGE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

THIS CAUSE having come before the Court upon Defendant, CitiMortgage, Inc.'s Motion to Dismiss Plaintiff's Complaint, and upon the agreement of counsel, and the Court being fully advised, it is hereby

ORDERED AND ADJUDGED that CitiMortgage, Inc.'s Motion to Dismiss Plaintiff's Complaint is GRANTED.  Plaintiff's Complaint is DISMISSED without prejudice.  Plaintiff is granted twenty-days leave from the entry of this order to amend his complaint.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida this _____ day of October 2012.

                                 CAROL-LISA PHILLIPS

                               OCT 1 6 2012
                   _____
                   Carol-Lisa Phillips
                   Circuit Court Judge
                   A TRUE COPY

Copies Furnished:

S. Tracy Long, Esq.
Law Offices of S. Tracy Long, P.A.
c/o Legal Management, LLC
600 W. Hillsboro Blvd., Suite 102
Deerfield Beach, FL 33441
stl@cloudlegal.com

{25278485;1}

Jason P. Bichsel, Esq.
Akerman Senterfitt
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
jason.bichsel@akerman.com

{25278485;1}

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Case No.: CACE12020276(25)

MURAT BENJAMIN and
VEONIE BENJAMIN, husband
and wife,

        Plaintiff(s),

v.

CITIMORTGAGE, INC.,

        Defendant.

_____/

### FIRST AMENDED COMPLAINT

Plaintiffs, MURAT BENJAMIN (hereinafter individually referred to as "MB") and VEONIE BENJAMIN (hereinafter individually referred to as "VB"), husband and wife (hereinafter collectively referred to as the "Homeowners"), sue Defendants, CITIBANK, N.A., a foreign corporation (hereinafter referred to as the "Bank") and CITIMORTGAGE, INC., a foreign corporation, (hereinafter referred to as the "Loan Servicer"), and allege:

JURISDICTIONAL ALLEGATIONS

1.    This is an action for damages, and additional relief, in excess of the jurisdictional amount of $15,000.00, exclusive of interest, costs and attorney's fees.

2.    The Homeowners are adult residents of Broward County, residing at 5309 Madison Street, Hollywood, Florida 33021 (hereinafter referred to as the "Subject Property"), and are in all respect material hereto, *sui juris*.

Case No.: CACE12020276(25)

3.      The Bank is a foreign corporation that is authorized to conduct, and is in fact conducting, business in the State of Florida and in Broward County, and, as a consequence thereof is, in all respect material hereto, subject to the jurisdiction of this Court.

4.      The Loan Servicer is also foreign corporation that is authorized to conduct, and is in fact conducting, business in the State of Florida and in Broward County, and, as a consequence thereof is, in all respect material hereto, subject to the jurisdiction of this Court.

5.      On August 2, 2005 (hereinafter referred to as the "Closing Date"), the Homeowners executed a Fixed Rate Note (hereinafter referred to as the "Note") regarding the Subject Property in favor of CitiFinancial Mortgage Company (FL) LLC (hereinafter referred to as the "Lender"), naming it the lender and payee under the Note, and also executed a Mortgage regarding the Subject Property in favor of the Lender, again naming the Lender as the lender and payee, as well as the Mortgagee under the Mortgage holding the legal recordable interest in the Subject Property under loan number EB6070192031 (hereinafter collectively referred to as the "'2031 Loan").

6.      The Lender recorded an assignment of mortgage of the '2031 Loan to the Servicer on October 30, 2012.

7.      At all times material hereto, the Bank and/or Loan Servicer has claimed that it is has the right to collect payments from the Homeowners on the '2031 Loan, the right to modify or engage in loss mitigation regarding the '2031 Loan, and the right to enforce the '2031 Loan on the Subject Property that is owned by the Debtor, and is located in Broward County, and, as a consequence thereof, venue for this action is proper in this Court.

2

Case No.: CACE12020276(25)

## GENERAL ALLEGATIONS

8.      At all times material hereto, the Homeowners have never received a Notice of Transfer or Assignment of the ownership of the '2031 Loan from the Lender to any other party, including the Bank and the Loan Servicer pursuant to the Truth in Lending Act ("TILA").

9.      At all times material hereto, the Homeowners have never received a Notice of Transfer or Assignment of the servicing rights regarding the '2031 Loan from the Lender to any other party, including the Bank and the Loan Servicer pursuant to the Real Estate Settlement Practices Act ("RESPA").

10.      Subsequent to the inception of the loan, the Homeowners began to receive statements from the Loan Servicer requesting that the Homeowners forward to the Debt Collector all payments due under the note and mortgage.

11.      At all times material hereto, the Homeowners began to question whether the Loan Servicer was the actual loan servicer for this loan, and that the Homeowners have been making payments on the loan to an unauthorized entity, and began to question whether any other entity other than the Lender was the authorized owner and/or holder of the note and mortgage.

12.      At all times material hereto, the Homeowners, in an effort to determine the true loan servicer of the loan and the true owner and/or holder of the note and mortgage sent a Debt Validation Letter and/or a Debt Verification Letter to the Loan Servicer under the Fair Debt Collection Practices Act ("FDCPA").

13.      At all times material hereto, the Homeowners, in an effort to determine the true loan servicer of the loan and the true owner and/or holder of the note and mortgage sent a Qualified Written Request ("QWR") to the Loan Servicer under RESPA.

3

Case No.: CACE12020276(25)

14.     At all times material hereto, the Loan Servicer either failed to (a) acknowledge the Debt Validation Letter and/or Debt Verification Letter, (b) respond to the Debt Validation Letter and/or Debt Verification Letter, or (c) provide a complete and adequate response to the Debt Validation Letter and/or Debt Verification Letter.

15.     At all times material hereto, the Loan Servicer either failed to (a) acknowledge the QWR, (b) respond to the QWR, or (c) provide a complete and adequate response to the QWR.

16.     At all times material hereto, the Homeowners contacted the Loan Servicer in an effort to modify the note and mortgage, but were unable to obtain the cooperation of the Loan Servicer in the modification process or loss mitigation process, and were told by the Loan Servicer that it could not modify the note and mortgage for this loan.

17.     At all times material hereto, and upon information and belief, the Note has been either paid in full by the Homeowners or a third party, the Lender has made a claim to a mortgage insurer for payment of the Note upon default, or the Lender has received a tax benefit for declaring the Note as a loss, and, as a consequence thereof, there are no amounts that are due and owing or payable by the Homeowners on the Note.

COUNT 1
(VIOLATIONS OF THE TRUTH IN LENDING ACT)

18.     Plaintiffs restate, reaver, and reallege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

19.     At all times material hereto, the '2031 Loan is a "mortgage loan" as it is defined by 15 U.S.C. § 1641(g)(2).

20.     At all times material hereto, the Subject Property is a "dwelling" as it is defined by 15 U.S.C. § 1602(v).

4

Case No.: CACE12020276(25)

21.     At all times material hereto, the assignee or new owner of a mortgage loan is required to notify the borrower that the loan has been transferred.

22.     At all times material hereto, the Bank and/or the Loan Servicer, as the representative of the Bank failed to notify or advise the Homeowners of the transfer of the Note and Mortgage.

23.     As a direct and proximate result of the Bank or Loan Servicer's violation of TILA, Plaintiffs have sustained statutory and actual damages, the inability to obtain a modification of the note and mortgage from the actual loan servicer of the loan and/or the actual owner and/or holder of the note and mortgage, which has caused the Homeowner to accrue arrearages, interest and penalties on the note and mortgage, and a potential loss of the property secured by the note and mortgage as a result of an adverse action on the note and mortgage.

WHEREFORE, Plaintiffs demand entry of judgment against Defendant for: (a) compensatory damages, (b) injunctive relief preventing Defendants from taking any adverse actions against Plaintiff on the note and mortgage, (c) a declaration that Defendants are not the loan servicer, owner and/or holder of the note and mortgage, or a creditor regarding the note and mortgage, (d) taxable costs as the prevailing party, (e) reasonable attorney's fees under TILA, as the prevailing party, (f) trial by jury on all issues so triable as a matter of right, and (g) such further relief which this Court deems just and proper under all of the facts and circumstances of the matter.

COUNT II
(VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT)

24.     Plaintiffs restate, reaver, and reallege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

5

Case No.: CACE12020276(25)

25.     At all times material hereto, the Loan Servicer is a "debt collector" as defined by
15 U.S.C. § 1692(a).

26.     At all times material hereto, the Loan Servicer violated the FDCPA through the
following actions:

a.     Failure to acknowledge the Debt Validation Letter of the Homeowners within the
time period that is set forth by the FDCPA;

b.     Failure to response to the Debt Validation Letter of the Homeowners within the
time period that is set forth by the FDCPA, and;

c.     Failure to provide a full and complete response to the Debt Validation Letter of
the Homeowners.

27.     As a direct and proximate result of the Loan Servicer's violation of the FDCPA,
Plaintiffs have sustained statutory and actual damages, the inability to obtain a modification of
the note and mortgage from the actual loan servicer of the loan and/or the actual owner and/or
holder of the note and mortgage, which has caused the Bank and/or Loan Servicer to accrue
arrearages, interest and penalties on the note and mortgage, and a potential loss of the property
secured by the note and mortgage as a result of an adverse action on the note and mortgage.

28.     As a direct and proximate result of the Loan Servicer's violation of the FDCPA,
Plaintiffs have sustained intangible damages in the form of emotional distress over the potential
loss of the property secured by the note and mortgage.

WHEREFORE, Plaintiffs demand entry of judgment against Defendant for: (a)
compensatory damages, (b) injunctive relief preventing Defendant from taking any adverse
actions against Plaintiffs on the note and mortgage, (c) a declaration that Defendant is not the

6

Case No.: CACE12020276(25)

loan servicer, owner and/or holder of the note and mortgage, or a creditor regarding the note and mortgage, (d) taxable costs as the prevailing party, (e) reasonable attorney's fees under the FDCPA, as the prevailing party, (f) trial by jury on all issues so triable as a matter of right, and (g) such further relief which this Court deems just and proper under all of the facts and circumstances of the matter.

COUNT III<br>(VIOLATIONS OF THE REAL ESTATE SETTLEMENT PRACTICES ACT)

29.     Plaintiffs restate, reaver, and reallege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

30.     At all times material hereto the Loan Servicer purports or claims to be a loan servicer of the Homeowners' note and mortgage to act as the third-party debt collector for an owner or holder of the Homeowner' note and mortgage. The Loan Servicer is, for the purposes of the FDCPA a "debt collector."

31.     At all times material hereto, RESPA establishes the requirements for how a mortgage loan servicer or lender must conduct its post-closing servicing of the loan. 12 U.S.C. § 2605(e) details the duties and statutory obligations of a loan servicer or lender in receiving and responding to borrower written inquiries.

32.     At all times material hereto under RESPA, if a loan servicer receives a QWR, it must acknowledge receipt thereof to the borrower or borrower's legal counsel within twenty (20) days.

33.     At all times material hereto the written correspondence that was forwarded by the Homeowners (or undersigned legal counsel) to the Loan Servicer was a QWR under RESPA.

34.     The Debt Collector violated RESPA through the following actions:

7

Case No.: CACE12020276(25)

    a.      Failure to acknowledge the Debt Validation Letter of the Homeowners within the time period that is set forth by the FDCPA;

    b.      Failure to response to the Debt Validation Letter of the Homeowners within the time period that is set forth by the FDCPA, and;

    c.      Failure to provide a full and complete response to the Debt Validation Letter of the Homeowners.

35.    As a direct and proximate result of the Loan Servicer's violation of the FDCPA, Plaintiffs have sustained statutory and actual damages, the inability to obtain a modification of the note and mortgage from the actual loan servicer of the loan and/or the actual owner and/or holder of the note and mortgage, which has caused the Bank and/or Loan Servicer to accrue arrearages, interest and penalties on the note and mortgage with a potential loss of the property secured by the note and mortgage as a result of an adverse action on the note and mortgage, and slander or credit, the inability to obtain credit (or loans) from other entities, or the reduction in credit limits from other entities.

36.    As a direct and proximate result of the Debt Collector's violation of the FDCPA, Plaintiffs have sustained intangible damages in the form of emotional distress over the loss of credit and credit rating/reputation.

WHEREFORE, Plaintiffs demand entry of judgment against Defendants for: (a) compensatory damages, (b) injunctive relief preventing Defendants from taking any adverse actions against Plaintiffs on the note and mortgage, (c) a declaration that Defendants are not the loan servicer, owner and/or holder of the note and mortgage, or a creditor regarding the note and mortgage, (d) taxable costs as the prevailing party, (e) reasonable attorney's fees under the

8

Case No.: CACE12020276(25)

RESPA, as the prevailing party, (f) trial by jury on all issues so triable as a matter of right, and (g) such further relief which this Court deems just and proper under all of the facts and circumstances of the matter.

COUNT IV
(VIOLATON OF FLORIDA DECEPTIVE AN UNFAIR TRADE PRACTICES ACT)
(Against the Loan Servicer Only)

37.    Plaintiffs restate, reaver, and reallege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

38.    At all times material hereto, the Loan Servicer is engaged in "trade or commerce" in the State of Florida and Broward County as defined by Section 501.202(8), Florida Statutes, in the conduct of their debt collection, loss mitigation and foreclosure activities.

39.    At all times material hereto, the Loan Servicer also willfully uses, or has used, methods, acts, practices which victimize or attempts to victimize homeowners during the course of a residential foreclosure proceeding, as set forth in Section 501.2078(2), Florida Statutes.

40.    In the course of their conduct, management and oversight of loan servicing for the Lender, and specifically the Homeowners' loan, the Loan Servicer has engaged in a pattern of unfair and deceptive practices.

41.    The Loan Servicer's unfair and deceptive practices in the discharge of their loan servicing activities, include, but are not limited to, the following:

a.    failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

b.    charging excessive or improper fees for default-related services;

c.    failing to properly oversee third party vendors involved in servicing activities on

9

Case No.: CACE12020276(25)

behalf of the Banks;

   d.     Imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage.

   e.     providing borrowers false or misleading information in response to borrower complaints; and

   f.     failing to maintain appropriate staffing, training, and quality control systems.

   42.    Under the Treasury's various rescue and stimulus programs, the mortgage servicers (or the lenders which they serviced) received monetary incentives from the Federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages. See, e.g., Making Home Affordable Handbook v.1.0, ch. 13 ("Inceptive Compensation") (Aug. 19, 2010). Under the programs, the Banks agreed to fulfill requirements set forth in program guidelines and servicer participation agreements.

   43.    The Loan Servicer in this case regularly conducts or manages modifications on behalf of the entities that hold the loans and mortgages and that hired the Loan Servicer as a mortgage servicer.

   44.    In the course of their servicing and oversight of mortgage loans, and specifically the Homeowner's mortgage loan, the Loan Servicer violated federal laws, program requirements and contractual requirements government loss mitigation.

   45.    In the course of their conduct, management, and oversight of loan modifications in the State of Florida, the Loan Servicer has engaged in a pattern of unfair and deceptive practices.

Case No.: CACE12020276(25)

46.     The Loan Servicer's failure to discharge their required loan modification obligations, and related unfair and deceptive practices, in general, but specifically in regard to the Homeowner's mortgage loan include, but are not limited to, the following:

a.     failing to perform proper loan modification underwriting;

b.     failing to gather or losing loan modification application documentation and other paperwork;

c.     failing to provide adequate staffing to implement programs;

d.     failing to adequately train staff responsible for loan modifications;

e.     failing to establish adequate processes for loan modifications;

f.     wrongfully denying modification applications;

g     failing to respond to borrower inquiries;

h.     providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

i.     providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

j.     failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

k.     miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers; misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

11

Case No.: CACE12020276(25)

     m.    failing to properly process borrowers' applications for loan modifications, including failing to respond to borrowers' reasonable requests for information and assistance;

     n.    failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers;

     o.    miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

     p.    misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

     q.    failing to properly process borrowers' applications for loan modifications, including failing to respond to borrowers' reasonable requests for information and assistance;

     r.    failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers;

     s.    misleading borrowers by providing false or deceptive reasons for denial of loan modifications.

     47.    As a direct and proximate result of the Loan Servicer's unlawful conduct, compromising deceptive and unfair trade practices which victimized the Homeowners and has resulted in injury to the Homeowner, including, but not limited to payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, and improper denial of loss mitigation relief.

     48.    As a direct and proximate result of the Loan Servicer's deceptive and unfair trade practices, the Homeowner has sustained significant economic damages, which will continue into the future, slander of credit, and loss of the subject Property.

12

Case No.: CACE12020276(25)

WHEREFORE, the Homeowners demand entry of judgment against Defendants for (a) compensatory damages; (b) punitive damages, upon a proper proffer of evidence to the Court, (c) reasonable attorneys fees pursuant to Section 501.2105, (d) taxable costs as the prevailing party, (d) trial by jury on all issues so triable as a matter of right, and (e) further relief that is deemed to be just and proper under all of the facts and circumstances of this matter.

COUNT V
(DECLARATORY RELIEF)

49.     Plaintiffs restate, reaver, and reallege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

50.     At all times material hereto, the Homeowners, as a result of the facts and circumstances set forth in greater detail above, have a legitimate controversy and question which requires the intervention of this Court to declare who the true loan servicer of the Homeowners' note and mortgage is, and who the true owner and/or holder of Plaintiffs' note and mortgage is.

51.     At all times material hereto, the Homeowners, as a result of the facts and circumstances set forth in greater detail above, have a legitimate controversy and question which requires the intervention of this Court to declare Plaintiffs' rights and obligations towards the Bank and/or Loan Servicer, if any, under the Plaintiffs' note and mortgage.

52.     At all times material hereto, the Homeowners, as a result of the facts and circumstances set forth in greater detail above, has a legitimate controversy and question which requires the intervention of this Court to declare the Bank and/or Loan Servicer's rights and obligations towards Plaintiffs' is under Plaintiffs' note and mortgage, specifically the Bank and/or Loan Servicer's (a) right to receive payment from Plaintiffs, (b) the right to assess of

13

Case No.: CACE12020276(25)

other fees and costs on Plaintiffs (c) the right to modify Plaintiffs' note and mortgage, and, most importantly, (d) Defendants' right to enforce Plaintiffs' note and mortgage.

53.     At all times material hereto, there is an actual controversy as to whether the Homeowners still owe the Bank and/or Loan Servicer, or any other unknown party, any further payments under the Note, in consideration of the fact that the subject Note has been either paid in full by the Homeowners or a third party, the Bank and/or Loan Servicer has made a claim to a mortgage insurer for payment of the Note upon default, or the Bank and/or Loan Servicer has received a tax benefit for declaring the Note as a loss.

54.     At all times material hereto, a Declaratory Judgment is necessary to determine if there is any continuing or further obligation of the Homeowners to make any further payments to the Trustee under the Note, and whether there is any continuing or further right of the Trustee to receive any payments from the Homeowners under the Note.

55.     At all times material hereto the declaration of this Court is necessary as further uncertainty, given the facts and circumstances of this matter, threaten to place Plaintiffs in further arrears under the note and mortgage, and adverse action under the note and mortgage whereby the property secured by the note and mortgage are threatened.

WHEREFORE, Plaintiffs demand entry of a Declaratory Judgment against Defendants on the following issues: (a) that neither of Defendants is the loan servicer of Plaintiffs' note and mortgage, (b) that neither of Defendants is the owner and/or owner of Plaintiffs' note and mortgage, (c) that no other entity other than the Lender is the true owner and/or holder of Plaintiffs' note and mortgage, (d) Defendants do not have the right or authority to collect any payments from Plaintiffs under the note and mortgage, (e) Defendants do not have the right or

Case No.: CACE12020276(25)

the authority to modify, or other wise engage in other loss mitigation regarding, Plaintiffs' note and mortgage, and (f) Defendants do not have the right or authority to enforce, or otherwise taken any adverse actions regarding, Plaintiffs' note and mortgage.

## COUNT VI
### (QUIET TITLE)

56.     Plaintiffs restate, reaver, and realllege paragraphs one (1) through seventeen (17) as if set forth more fully herein, and would allege still further:

57.     At all times material hereto, the subject Mortgage is a cloud upon Plaintiffs' title to the subject property, in consideration that the underlying Note has been paid or the obligations and rights thereunder have been extinguished, and there is no further right of enforcement on the part of the Trustee.

58.     At all times material hereto, the subject Mortgage remains unsatisfied of record.

WHEREFORE, Plaintiffs demand entry of judgment against Defendants for: (a) a judicial declaration that the Mortgage recorded at book number 5516, page number 8484 in Brevard County Public Records to be null and void, (b) a judicial declaration cancelling the Mortgage of record, (c) a judicial declaration quieting the title to the property owned by Plaintiffs and against Defendants and all person claiming by, through and under Defendants, (d) an award of taxable costs as the prevailing party, and (e) such further relief as this Court deems to be just and proper under all of the facts and circumstances of this matter.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by E-Mail to the following parties not exempt from Rule 2.516, Fla. R. Jud. Admin, and/or by U.S. Mail to any other parties: Jason Bichsel, Esq., Akerman Senterfitt, *Attorney for*

Case No.: CACE12020276(25)

*CITIMORTGAGE, INC.*, jason.bichsel@akerman.com, 350 East Las Olas Blvd., Suite 1600, Fort

Lauderdale, Florida 33201 this 5th day of November, 2012.

Respectfully submitted,

The Law Offices of S. Tracy Long, P.A.
*Attorneys for Murat and Veonie Benjamin*
c/o Legal Management, LLC
600 W. Hillsboro Boulevard
Suite 102
Deerfield Beach, Florida 33441
Telephone: (954) 719-7900
Facsimile: (888) 600-9180
**Designated E-Mail for Service:**
service@cloudlegal.com

By: _____

S. Tracy Long, Esq.
Fla. Bar No.: 0843008
**Correspondence E-Mail:**
stl@cloudlegal.com