UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

MURAT BENJAMIN and                              Case No.: 12-cv-62291-FAM
VEONIE BENJAMIN,
          Plaintiff(s),

v.

CITIMORTGAGE, INC., et al.
          Defendant(s).

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiffs MURAT BENJAMIN and VEONIE BENJAMIN, by and through the undersigned attorney, and hereby files this response to Defendant CITIMORTGAGE, INC.'s Motion to Dismiss Complaint and states:

#### Introduction

The matter before the court is simple. CMI began demanding payment from the Homeowners. The Homeowners requested, in accordance with TILA, RESPA and the FDCPA, proof than CMI had the right to enforce the note. CMI refused, and still refuses, to make the disclosures requested. CMI lured the Homeowners into paying excessive fees and costs by claiming that it would help the Homeowners in modifying the loan. When the Homeowners became suspicious of CMI's behavior, it requested information under various Federal Laws. CMI refused to comply, and the result was this lawsuit. But regardless of how the parties arrived in this venue, the motion before the court merely asks whether the Complaint satisfies the pleading requirements of the Federal Rules.

The Homeowners have plead all of their claims well. Dismissal is not warranted simply

because CMI disputes the veracity of the facts plead. CMI's reasoning throughout its motion is flawed for several reasons. First, CMI asserts contradictory arguments, demonstrating the ambiguity and duplicity that led to this action. Second, rather than showing a deficiency in the allegations, CMI denies the truth the allegations. Denials belong in an answer and do not serve as grounds for dismissal. Third, CMI argues that the Homeowners produce insufficient evidence of their claims. A lack of evidence is grounds to strike or for summary judgment, not dismissal. And fourth, CMI applies to wrong case law to issues at hand.

A. **Legal Standard for a Motion to Dismiss.**

Pleadings need only provide a short, plain statement sufficient to put other parties on notice as to the cause of action asserted and the facts upon which they are based. "The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one." *Connors v. Orlando Regional Healthcare System, Inc.*, 2009 WL 2524568 *1 (M.D.Fla. 2009). A court will accept the factual allegations of the plaintiff's complaint as true, construe the allegations in the light most favorable to the plaintiff, and view the allegations to determine whether the plaintiff has satisfied his obligation of pleading a basis of relief that is not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). The Complaint should not be dismissed so long as it clearly states legal and factual bases for the claims. "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004) Whether the defendant agrees with or disputes the facts alleged is irrelevant for 12(b)(6) purposes.

12-cv-62291-FAM

B. **Sufficiency of the Pleadings**

1. **Count I – Violations of the Truth in Lending Act ("TILA")**

TILA requires that borrowers' obligations be clearly and unambiguously explained to them, the moniker "Truth in Lending." When a mortgage is transferred, TILA requires the assignee of a mortgage to notify a mortgagor. Specifically, 15 U.S.C. 1692(g) provides:

> "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and
>
> (E) any other relevant information regarding the new creditor."

The First Amended Complaint plainly states that a mortgage assignment to CMI was recorded on October 30, 2012. [Am. Comp., ¶ 6]. The Complaint also plainly states that the Homeowners never received any notice whatsoever of any information at all relating to apparent transfer. [Am. Comp., ¶22]. Homeowners are unable to provide more specificity prior to Discovery, quite simply, because CMI has neglected to provide Homeowners with the notice and information required by §1692(g) of TILA. Count I is sufficiently plead.

CMI does not argue that Count I is insufficiently plead. Instead, CMI argues that the TILA claim is time-barred because the original mortgage was consummated several years ago. This argument might have merit were the Homeowners' TILA claim based upon that original

3

transaction. However, it is clear from the Complaint that Count I arises from CMI's failure to provide notice of the transfer, not from any insufficient notice at the time of the original mortgage transaction. This argument is thus irrelevant.

CMI also argues that it has no liability under TILA because it is not an owner or assignee of the debt. This argument amounts to a simple denial of the allegations which aver that the mortgage was assigned to CMI on or before October 30, 2012. [Am. Comp., ¶ 6]. Again, CMI does not argue that the pleadings are legally or factually deficient, but merely denies their veracity. This argument belongs in an Answer, not a Motion to Dismiss.

The Homeowners also note that CMI alternately claims both that it is NOT an assignee [DE-6, p. 6] and that it IS an assignee [DE-6, p. 7-8] in the same document. This sort of duplicity is not constructive and only tumesces this litigation.

2. **Count II – Violations of the Fair Debt Collections Practices Act ("FDCPA")**

Congress enacted the FDCPA to (a) stop debt collectors from using abusive debt collection practices, and (b) protect consumers against debt collection abuses. *Boone v. JP Morgan Chase Bank*, 447 Fed.Appx. 961, 965 (C.A.11 2011); citing *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir.2009). The FDCPA provides a civil cause of action against any debt collector who fails to comply with its requirements. *Id.*

If a consumer notifies the debt collector in writing, within 30 days after receipt of an initial notice of debt, that the debt is disputed, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b).

4

12-cv-62291-FAM

A cause of action under the FDCPA must allege "(1) that plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." [DE-6, p. 7] citing *Nawab v. Bank of America*, No. 12-cv-130-J-32TBS, 2012 WL 2917852, *1-2 (M.D. Fla. 2012). To simplify matters for the Court, the Homeowners have iterated CMI's presentation of the elements and case references regarding a FUDPTA claim.

Regarding the first element, the Complaint alleges (1) the debt is a "mortgage loan" [Am. Comp., ¶ 19]. CMI's claim that the Homeowners failed to allege the type of debt at issue [DE-6, p. 7] is just plain false. It is also disingenuous and borderline egregious considering that the mortgage from which the debt springs *is an exhibit to the very motion where CMI claims the type of debt alleged is unclear.* CMI avers that it is unclear what sort of debt is at issue while simultaneously asking the court to read its copy of the document creating the debt.[1]

As to the second element, (2) the Homeowners allege that CMI is a "debt collector" [Am. Comp., ¶ 25]. CMI argues that this is an insufficient pleading because CMI believes it is not a debt collector. [DE-6, p. 7] Whether CMI believes itself to be a debt collector is irrelevant for 12(b)(6) purposes. The allegation by Homeowners is taken as true for purposes of a Motion to Dismiss. CMI disputes only the accuracy of this allegation, not that it fails to allege a cogent claim. This argument is a simple denial that belongs in an Answer, not a motion to dismiss.

CMI curiously bases its denial of this allegation upon a contention that it IS an assignee of the debt prior to default. *Id.* This directly contradicts its earlier argument that it is NOT an

---

1  CMI asks the court to consider extrinsic evidence in considering a Motion to Dismiss. Because the evidence CMI introduces does not evince an deficiency in the legal or factual allegations of the Complaint, Homeowners have elected not to address the propriety of considering evidence at this nascent stage of the pending action.

assignee. The assignment to CMI was recorded after CMI accused the Homeowners of default. This suggests two possibilities: 1) that CMI improperly sought to collect on the debt prior to its obtaining the right to enforce the note, or 2) that CMI obtained the note after the alleged default and therefore is a debt collector according to its own interpretation of the case law.

Finally, the Homeowners allege element (3), that a debt validation letter was sent and that CMI failed to acknowledge and adequately respond to the Homeowner's Debt Validation Letter [Am. Comp., ¶¶ 12, 14 and 26]. CMI does not challenge this allegation. The Complaint pleads precisely what is required according to the case cited by CMI.

CMI points out that the Complaint lacks "dates of the alleged debt validation letters, the sender, or if the alleged letter (sic) were even received." [DE-6, p. 7]. CMI cites no case law, or any authority at all, to support the contention that an FDCPA claim requires such specificity. Homeowners are also unaware of any support for this argument.

3. **Count III – Violations of the Real Estate Settlement Practices Act ("RESPA")**

CMI states that a valid RESPA claim requires that plaintiff allege (1) defendant is a loan servicer, (2) plaintiff sent a qualified written request under RESPA (a "QWR"), (3) defendant failed to respond timely and (4) plaintiff has suffered damages. [DE-6, p. 8] citing *Correa v. BAC Home Loans Servicing LP*, 853 F.Supp. 1203 (M.D. Fla. 2012). The Complaint alleges that CMI is a loan servicer [Am. Comp., ¶ 30] and CMI in its Motion refers to itself as a loan servicer [DE-6, pp.6-10]. The Complaint further alleges that the Homeowners sent a QWR, that CMI did not respond to the QWR and that the Homeowners suffered damages. [Am. Comp., ¶¶ 33-36].

CMI claims that the Homeowners failed to allege submission of a QWR. This is simply incorrect. [Am. Comp., ¶ 30] CMI also believes the Complaint provides insufficient facts,

6

asking the Court to rule that a properly plead RESPA claim includes "how [a] letter can be marked as a QWR" and what type of information would enable a defendant to identify the name of the borrower. [DE-6, p. 9]. Apparently CMI contends that borrowers must *explicitly* allege in a complaint that they included their names on the letters they mail to lenders. The only support offered for this novel position is *Malally v. BAC Home Loan Servc., LLC*, 2010 WL 5140626 (N.D. Ga. 2010). In *Malally*, a complaint was deemed deficient, not because it lacked precise details, but because it lacked a "short, plain statement." In that case, the only factual support of the RESPA claim was hidden as "a one-line allegation buried within a legal discourse" interpreting an unrelated statute. *Id*. In *Malally*, the Court found that the parties should not be required to scour a lengthy document to find inconspicuous allegations. *Id*.

In the current Complaint, the RESPA claim is not buried in a legal discourse, but rather is clearly stated in short, plain and enumerated statements in a location that clearly identifies them as allegations relating to the RESPA claim. The Homeowners have not concealed an obscure fact in a lengthy espousal of a separate area of law. *Malally* is not relevant. Further, the singular position CMI asks the Court to adopt would require every Complaint to include a detailed analysis of the requirements of RESPA and plead extreme specificity such as "plaintiffs included their own names and addresses on the letters they mailed."

    4.    **Count IV – Violations of Florida Deceptive and Unfair Business Practices Act ("FDUPTA")**

In order to prevail under a claim for a traditional FDUPTA violation, Plaintiff must establish the following: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Feheley v. Lai Games Sales, Inc.*, No. 08–23060–civ, 2009 WL 2474061, at *5 (S.D.Fla.2009); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10–22153–CIV, 2011

7

WL 4434891, at *5 (S.D.Fla. Sept.23, 2011) (citing *KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1073 (Fla. 5th DCA 2008)).

  a. **False and Deceptive Loan Practices Constitute Deceptive and Unfair Trade Practices.**

Pleading that a lender made false or misleading representations regarding how it handles monies paid under a loan agreement is sufficient to support a claim under FDUPTA. *Williams v. Delray Auto Mall, Inc.*, --- F.Supp.2d ----, 2013 WL 64616 *5 (S.D.Fla. 2013). In *Williams*, the Complaint alleged a "scam buy-back" that mislead the borrower regarding how her equity in her trade-in was disbursed. *Id*. at *1. The Court held that alleging false and misleading statements regarding how the lender structured the transaction states a plausible cause of action under FDUPTA. The court also found that pleading violations of other statutes in conjunction with a FDUPTA claim constitutes a proper plead FDUPTA *per se* violation. *Id*. at *5.

The Homeowners allege that CMI has taken several actions that constitute deceptive or unfair practices, including "failing to timely and accurately apply payments made by borrowers...charging excessive or improper fees for default related services...imposing force-placed insurance without properly notifying the borrowers...providing borrowers false or misleading information." [Am. Comp., ¶ 41 and 46]. In addition, Counts I-V of the Complaint allege several violations of Federal Statutes, which support a FDUPTA unfair competition *per se* claim. *Williams* at *5. Like the Complaint in *Williams*, Homeowners' Complaint alleges false and misleading statements by CMI regarding how its loan, and debt collections were structured, e.g. excessive and improper charges. [Am. Comp., ¶ 41 and 46].

A "deceptive act or unfair practice" may be found when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the

circumstances, to the consumer's detriment." *Sundance Apartments I, Inc. v. General Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1220 (S.D.Fla.2008) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla.2003)). In contrast, a *"per se* violation of FDUPTA stems from the transgression of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.' " *Feheley,* 2009 WL 2474061, at *4 (citing Fla. Stat. § 501.203(3)(c)).

The Homeowners plead several enumerated actions by CMI that constitute unfair and deceptive trade practices. [DE-6, p. 12 and Am. Comp., ¶ 46]. CMI characterizes these enumerated paragraphs as "boilerplate." The allegations are not "boilerplate." They are a list of several different actions that are part of a larger strategy by CMI to deal unfairly with borrowers, and specifically Homeowners in the name of lucre. Furthermore, the violation of the other Federal Statutes, when resulting in detriment to Homeowners, constitutes FDUPTA violations *per se* as defined in this venue as recently as last week. *Williams* at *5.

Note that CMI does not argue that these "boilerplate" allegations, when taken as true, fail to state a cogent claim. CMI is really arguing that the Homeowners lack evidentiary support for them. Such an argument is more appropriately made in a Motion to Strike at the close of Discovery or a Motion for Summary Judgment.

**b. Debt Collection and Loss Mitigation Services Constitute "Trade or Commerce."**

First, turning to the statute, we see that according to FDUPTA, "[t]rade or commerce means the advertising, **soliciting, providing, offering**, or distributing, whether by sale, rental, or otherwise, of **any** good or **service**." Fla. Stat. §201.203(8) (emphasis added). The Complaint

9

pleads that CMI used unfair and deceptive practices "in the conduct of their debt collection, loss mitigation and foreclosure activities." [Am. Comp., ¶ 38, emphasis added].

Second, turning to the case law, using deception in collecting on a debt constitutes "trade or commerce" under FDUPTA. *Williams* at *5. CMI contends that it is not engaged in "trade or commerce" as required under FDUPTA. [DE-6, pp. 10-12] CMI cites *Trent v. Mortgage Electronic Registration Sys., Inc.*, 618 F.Supp.2d 1356, 1365 (M.D. Fla. 2007) for the contention that "courts find no 'trade or commerce' in the cases of mortgage loan servicing." [DE-6, p. 11]. In *Trent*, the court stated, in a purely dicta endnote, that the actions by MERS in that suit did not amount to "trade or commerce" because MERS had merely filed a foreclosure action. *Trent* 1366, en 12. The Homeowners do not allege that filing a foreclosure action by itself constitutes trade or commerce. The Complaint pleads that CMI used unfair and deceptive practices "in the conduct of their *debt collection, loss mitigation* and foreclosure *activities*." [Am. Comp., ¶ 38, emphasis added]. This explicitly includes more than merely filing a foreclosure lawsuit. In fact, the pleadings allege facts very similar to *Williams*, i.e. a party using deception when collecting payments on a loan. *Williams* at *1.

CMI incorrectly claims that the Homeowners have plead no "unfair" or "deceptive" act because Homeowners do not allege actions with respect to "his" loan or that "he" was misled. [DE-6, p. 12-13]. This argument is just plain false. The Homeowners explicitly allege "unfair and deceptive practices…*specifically in regard to the Homeowner's mortgage loan* include…." and goes on to enumerate several actions CMI took against Homeowners. [Am. Comp., ¶ 46] (emphasis added).

12-cv-62291-FAM

CMI also argues that the Homeowners did not purchase any goods or services from CMI. *Id.* at 11. The fact that Homeowners did not purchase tangible goods from CMI is inapposite. The CMI provided loss mitigation services to Homeowners, and this constitutes "trade or commerce." Further, nowhere does FDUPTA require require an aggrieved party to lie in privity with the malfeasor. CMI provides no authority to support this narrow reading of the statute. Further still, even were privity required, CMI claims to be an assignee of the mortgage and note (at least some of the time) and would therefore "step into the shoes" of the original lender.

c. **Homeowners Allege Causation.**

The Homeowners clearly allege causation and damages, claiming CMI offered and provided loan modification services using unfair and deceptive practices and this caused detriment of the Homeowners [Am. Comp., ¶¶ 46-48]. CMI claims that the Homeowners do not allege causation or explain "how the alleged misrepresentation or acts caused him damage." [DE-6, p. 14] This argument is just plain false. The Complaint very clearly alleges "[a]s a direct and proximate result of [CMI's] unlawful conduct...has resulted in injury to the Homeowner, including…payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, and improper denial of loss mitigation relief." [Am. Comp., ¶ 47].

d. **Homeowners Allege Actual Damages.**

CMI's argues that Homeowners allege "no recoverable damages, but merely claims to have 'sustained economic damages.'" [DE-6, p. 14]. This argument is just plain false. Homeowners explicitly claim injuries "including, but not limited to payment of improper fees and charges, unreasonable...expenses...and improper denial of loss mitigation relief." [Am. Comp., ¶¶ 47]. Homeowners also allege they have sustained "loss of the subject Property."

11

[Am. Comp., ¶¶ 48]. These fees, charges, expenses, improper denial of relief and loss of property all constitute direct, actual damages, not incidental or indirect damages.

CMI argues that there is only one way to calculate "actual damages" under FDUPTA – by calculating the diminished value of the goods received. [DE-6, p. 14]. Where the FDUPTA claim is based upon trademark infringement and/or "palming off," this is certainly a viable means of measuring actual damages. However, the method of calculating damages varies according to the type of FDUPTA claim.

Rather than expound upon the sundry methods of calculating actual damages here in considering a motion to dismiss, the Homeowners will simply point out that should the Court limit itself to such a narrow definition of "actual damages," the claim survives simply because it has alleged "excessive fees."[Am. Comp., ¶¶ 46 and 47] and the damages may be calculated under CMI's proffered equation by finding the amount by which CMI's fees are excessive.

### 5. Count V - Declaratory Judgment

The Homeowners have a legitimate question as to who the proper loan servicer is. "With respect to a declaratory judgment action, the claimant must demonstrate that it is in doubt as to the existence or nonexistence of some right or status, and that it is entitled to have such doubt removed." *Yorty v. Realty Inv. & Mortg. Corp. Inc.*, 938 So.2d 1, 4 (Fla. 3rd DCA 2006). *citing Bryant v. Gray*, 70 So.2d 581, 584 (Fla.1954); *Abruzzo v. Haller*, 603 So.2d 1338, 1339 (Fla. 1st DCA 1992); *Kelner v. Woody*, 399 So.2d 35, 37 (Fla. 3d DCA 1981). CMI has never divulged how acquired its claimed rights to enforce and/or modify the note. CMI's own motion to dismiss is not only silent on the matter, but further muddies. As explained above, CMI claims that it both is and is not an assignee. See also [DE-6, pp. 6-8]. An assignment to CMI was recorded, but not

until after it sought to enforce the mortgage. [Am. Comp., ¶ 6].

The Homeowners tried to clarify this matter without resorting to litigation. CMI refused to comply with the laws requiring it to come out from behind its shroud of mystery. CMI never sent notice required under TILA and failed to respond to inquiries by Homeowner as required by RESPA and FDCPA. [Am. Comp., Counts I – III] CMI has refused deal fairly with the Homeowners, thereby necessitating this action, and complain that there are no questions regarding its rights to enforce.

CMI also argues that because the Homeowners have alleged legal remedies, there is no risk to Homeowners of continuing irreparable injury. [DE-6, p. 16]. This logic is faulty. It is quite possible for a party to suffer monetary damages and still face continuing irreparable injury; the two are not mutually exclusive.

In this case, even if the Homeowners prevail on Counts I – IV, the question of what CMI's rights to enforce the note and mortgage actually are will still remain. Without a declaration by the Court as the Bank and Loan Servicer's "(a) right to receive payment from Plaintiffs, (b) the right to assess of other fees and costs on Plaintiffs, (c) the right to modify Plaintiffs' note and mortgage, and most importantly, (d) Defendants' right to enforce Plaintiffs' note and mortgage" the Homeowners have a very real concern that parties without right will pursue claims against them. [Am. Comp. ¶52]. Compensation for past malfeasances will not abate this very real possibility.

  6.  **Count VI – Quiet Title.**

The Homeowners have alleged a justiciable matter. "Essentially, a complaint to quiet title to real property against an alleged cloud upon it should allege sufficient facts to present a

justiciable matter" *Woodruff v. Taylor*, 118 So.2d 822 (Fla. DCA 1960). The Homeowners allege that the defendants have no rights under the mortgage and/or note. [Am. Comp. ¶57]. They also allege that the mortgage is recorded as unsatisfied. [Am. Comp. ¶58]. The Complaint also makes clear that the only party seeking to enforce the note has never provided any evidence that its attempts to enforce the note are supported by legitimate rights. [Am. Comp. ¶1 – 17].

CMI claims that the Homeowner's allegations "merely question the validity of the note and mortgage." [DE-6, p. 17]. This is just plain false. Nowhere do the Homeowners allege that the original mortgage or note are invalid. The Homeowners allege that its obligations under the mortgage have been extinguished. [Am. Comp. ¶57].

7. **Failures of Condition Precedent – Unrelated to any specific Count, No Breach of Contract Claim**

The Homeowners lastly address CMI's very first argument in their Motion to Dismiss. CMI asks the Court to dismiss the Complaint because it fails to affirmatively plead that Homeowners have satisfied all conditions precedent to enforce the Mortgage. [DE-6, p. 3]. This argument would have considerably more merit were Homeowners seeking merely to enforce the mortgage. However, Homeowners are not pursuing CMI for breach of contract. From a plain reading of the Complaint it is clear that Homeowners' allege violations of several Federal Statutes and question whether CMI has any right at all to enforce the note.

Further, under Florida law, a failure of condition precedent is an affirmative defense that must be explicitly plead. Failing to preemptively counter an affirmative defense is not grounds for dismissal.

12-cv-62291-FAM

## 8. Leave to Amend.

The Homeowners' Complaint was filed in state court and satisfies the pleading requirement for the state of Florida. CMI removed this action to this venue. Should the Court determine that plaintiffs' Complaint fails to meet any Federal pleading requirements, the Homeowners should be granted an opportunity to amend the complaint to comply with the rules of the venue it did not select.

Respectfully submitted,

The Law Offices of S. Tracy Long, P.A.

600 W. Hillsboro Boulevard. Suite 102
Deerfield Beach, Florida 33441
Telephone: (954) 719-7900
Facsimile: (888) 600-9180

By: /s/ S. Tracy Long
S. Tracy Long, Esq.
Fla. Bar No.: 0843008
E-Mail: stl@cloudlegal.com
Service E-Mail: service@cloudlegal.com

12-cv-62291-FAM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th of January, 2013, I electronically filed the foregoing document with the Clerk of Court using CM-ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated in this case band via U.S. Mail to those parties registered to receive electronic notices of filing this case.

## SERVICE LIST

Jason P. Bischel, Esq.
Akerman Senterfitt
350 East Las Olas, Suite 1600
Fort Lauderdale, FL 33301
Jason.bischel.akerman.com
*Counsel for Defendant Citimortgage, Inc.*